Case 4:16-cr-00112-HSG   Document 18   Filed 08/17/16   Page 1 of 7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| USA, | |
|---|---|
| Plaintiff, | Case No. 16-cr-00112-HSG-1 |
| v. | **ORDER DENYING MOTION TO DISMISS INDICTMENT** |
| SANTOS ANTONIO GAMEZ-IRIAS, | Re: Dkt. No. 18 |
| Defendant. | |

## I. INTRODUCTION

Defendant Santos Antonio Gamez-Irias is charged with one count of violating 8 U.S.C. § 1326, which prohibits an individual from re-entering the United States after being deported. Dkt. No. 6 ("Indictment") at 3. Defendant moves to dismiss the indictment on the basis that his removal proceedings were fundamentally unfair, and therefore the resulting removal orders cannot serve as predicates to support a charge under § 1326. *See* Dkt. No. 12 ("Mot.") at 1. Because the Court finds that Defendant was not prejudiced by the alleged due process violations during his 2005 removal proceeding, the 2005 deportation order is a valid predicate for the charge. Accordingly, Defendant's motion to dismiss is **DENIED**.

## II. BACKGROUND

Defendant was born in Honduras and remains a Honduran citizen. Dkt. No. 12-2, Ex. G, Record of Deportable/Inadmissible Alien, Feb. 15, 2008. He entered the United States in July of 2004, and he was removed from the United States on June 1, 2005, based upon a final deportation order issued by an Immigration Judge ("IJ") on May 5, 2005. Dkt. No. 12-2, Ex. F. Defendant again entered the United States on February 14, 2008, and was apprehended by the Department of Homeland Security. Dkt. No. 12-2, Ex. G ("Record of Deportable/Inadmissible Alien"). He was

1   ordered removed from the United States on February 15, 2008, under the expedited removal
2   process. *Id.* Defendant's May 2005 deportation order was reinstated in 2009 and 2010, and his
3   February 2008 order was reinstated in 2012. Dkt. No. 12-2, Exs. K, L, M.
4       Defendant returned the United States sometime after his last deportation in 2012, and is
5   charged with one count of violating 8 U.S.C. §§ 1326(a) and (b) for illegally reentering the United
6   States without permission of the Attorney General or the Secretary of Homeland Security. *See*
7   Indictment at 3.

## III. DISCUSSION

On May 16, 2016, Defendant filed the pending motion to dismiss the indictment. Defendant asserts that the underlying deportation orders violated his Fifth Amendment right to due process and thus cannot serve as predicates for the § 1326 illegal reentry charge. *See* Mot. at 1. Defendant challenges his May 2005 deportation order on the ground that the IJ did not meaningfully inform him of his eligibility for voluntary departure or provide him a meaningful opportunity to apply for relief. *Id.* at 9. Defendant challenges the February 2008 order on the ground that the expedited removal proceeding did not inform Defendant of the specific immigration charges against him or give him the opportunity to respond. *Id.* at 17.

### A. Legal Standard

A defendant charged with violating § 1326 may challenge the validity of the underlying deportation order. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). To bring a successful collateral attack on an underlying deportation order, a defendant must prove that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015), *cert. denied sub nom. Gonzales-Flores v. United States*, 136 S. Ct. 1234, 194 L. Ed. 2d 229 (2016) (citing 8 U.S.C. § 1326(d)).

"An underlying removal order is fundamentally unfair if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered

prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotations and citations omitted).

### i. Underlying Due Process Violation

An underlying deportation proceeding violates a defendant's right to due process when the IJ "fails to give [him] any information about the existence of relief for which [he] is 'apparently eligible,'" "erroneously tells [him] that no relief is possible," or states that he is eligible for relief, "but immediately negat[es] that statement so that it is as if he was told that he did not qualify for this relief." *Gonzalez-Flores*, 804 F.3d at 926-27. A showing of such a defect excuses the defendant from proving exhaustion of administrative remedies under 8 U.S.C. § 1326(d)(1), and proves that he was improperly denied the opportunity for judicial review under 8 U.S.C. § 1326(d)(2). *Id.*

### ii. Resulting Prejudice

Once a defendant demonstrates that his due process rights were violated during an underlying deportation proceeding, he must then establish that "he suffered prejudice as a result of the defects." *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000). To prove prejudice, a defendant seeking a discretionary form of relief "must make a 'plausible showing' that an IJ presented with all of the facts would exercise discretion in the [defendant's] favor." *Gonzalez-Flores*, 804 F.3d at 927. "[T]he defendant bears the burden of proving prejudice under § 1326(d)(3)." *Id.*

The Ninth Circuit applies a two-step process to determine whether a defendant claiming apparent eligibility for voluntary departure has demonstrated prejudice from underlying due process violations. *Id.* First, a court considers "the positive and negative factors an IJ would consider relevant to an exercise of discretion." *Id.* Positive factors include "long residence, close family ties to the United States, and humanitarian needs." *Id.* Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* Second, a court determines whether the defendant has carried his "burden of proving it was

plausible (not merely conceivable) that the IJ would have exercised his discretion in the [defendant's] favor." *Id.* To assess plausibility, a court focuses on whether defendants with similar circumstances have received relief. *Id.* "Establishing plausibility requires more than establishing a mere possibility," and the existence of a single case on point is insufficient to establish plausibility. *Id.*

### B. Analysis

With this standard in mind, the Court considers whether Defendant has successfully attacked his prior deportation orders under § 1326(d). To succeed on his motion to dismiss, Defendant must show that both his May 2005 deportation order and his February 2008 deportation order are invalid. If either challenge fails, the valid deportation order can serve as the necessary predicate for Defendant's indictment under 8 U.S.C. § 1326.

The Court finds that because Defendant has failed to show prejudice as a result of the alleged due process violations during his 2005 deportation proceeding, the Court need not address whether the 2005 deportation proceeding violated Defendant's due process rights, or consider the validity of Defendant's February 2008 deportation order.

#### i. Defendant Has Failed to Establish Prejudice As a Result of His 2005 Deportation Proceeding

To determine whether the 2005 deportation proceeding prejudiced Defendant, the Court must first examine Defendant's positive and negatives equities that an IJ would consider relevant to an exercise of discretion. *Gonzalez-Flores*, 804 F.3d at 927. Second, the Court must decide whether, considering Defendant's equities, Defendant has demonstrated that it is plausible that an IJ would have exercised his discretion to grant Defendant voluntary departure. *Id.*

##### a. Defendant's Equities

In this case, Defendant did not have any positive equities at the time of his first deportation. He had no close family ties to the United States, nor had he lived here very long. Defendant was born in Honduras in 1976, where he lived and worked with his family until he first entered the United States in 2004, at around age 27. Dkt. No. 12-2, Ex. A ("Def. Decl."). Defendant's wife and parents reside in Honduras, they are not United States citizens, and they

4

have never resided in the United States. Dkt. No. 12-2, Ex. I ("Record of Sworn Statement") at 28:20-29:11. Nor does Defendant's situation raise any humanitarian concerns. *Id.* at 28:6-17.

On the other hand, Defendant's negative equities were minimal. The 2005 removal proceeding was his first removal proceeding, and he had no other illegal entries at the time. *See* Dkt. No. 1 ("Compl.") at 3-4. Defendant had no criminal convictions, though he had been arrested in April 2005, and the record reflects no other evidence that Defendant demonstrated bad character or undesirability as a permanent resident.

### b. Plausibility of Voluntary Departure

In determining whether Defendant has established that it is plausible that he would have been granted voluntary departure, the Court focuses on whether defendants with similar circumstances have received relief. *Gonzalez-Flores*, 804 F.3d at 927. Given Defendant's lack of positive equities, the Court holds that Defendant has failed to establish that voluntary departure was plausible.

As discussed above, Defendant had no positive equities that would support an IJ's exercise of discretionary relief. *See Rojas-Pedroza*, 716 F.3d at 1265 (positive factors include "long residence, close family ties to the United States, and humanitarian needs."). He did not enter the United States until he was around 27, and all of his family lives in Honduras. Def. Decl.; Record of Sworn Statement. Further, there are no humanitarian concerns that would counsel against Defendant's deportation to Honduras.

Defendant maintains that he has established plausibility despite his lack of positive equities for three reasons: (1) the relief sought — meaningful advisement of voluntary departure — is a less significant form of relief than other relief such as cancellation of departure, and therefore requires a lesser showing of equities; (2) positive equities are only relevant to compensate for negative equities such as a criminal record, and Defendant's negative equities are minimal; and (3) several courts have granted discretionary relief to defendants with significantly more negative equities than Defendant. Dkt. No. 16 ("Reply") at 8-20; Mot. at 16. The Court is not persuaded.

Defendant has identified no authority suggesting that an absence of significant negative equities, without some showing of positive equities, is sufficient to establish plausibility of

voluntary departure. Nor has Defendant cited any cases standing for the proposition that the Court should only consider positive equities in the plausibility calculus to the extent necessary to offset negative equities.

In addition, Defendant's cited cases, in which aliens with significantly more negative equities received discretionary relief, fail to establish that voluntary departure was a plausible prospect here. In each of those cases, the defendant benefitted from significant, or even compelling, positive equities. *See Ubaldo-Figueroa*, 364 F.3d at 1051 ("The equities in Ubaldo-Figueroa's favor are significant."); *Pallares-Galan*, 359 F.3d at 1104 ("[H]is favorable equities are substantial."); *United States v. Cuenca-Vega*, 544 F. App'x 688, 690 n.3 (9th Cir. 2013) (unpublished) ("[H]e had several positive equities: he had been in the United States for ten years, since age 13; his mother was a United States citizen; he had graduated from a California high school; and he had been employed from 1999 to 2002."); *United States v. Alcazar-Bustos*, 382 F. App'x 568, 570 (9th Cir. 2010) (unpublished) ("Two factors in his background, his near-lifetime residence in this country and his family members' citizenship, plainly favor pre-conclusion voluntary departure."); *United States v. Vasallo-Martinez*, 360 F. App'x 731, 733 (9th Cir. 2009) (unpublished) ("Nor did the district court factor into its analysis the numerous countervailing equities that would weigh in favor of granting relief."); *United States v. Reyes*, 907 F. Supp. 2d 1068, 1078-79 (N.D. Cal. 2012) ("[T]he Court notes that Defendant has a long work history in this country and was providing sole support to his girlfriend and their child [and] has numerous relatives in northern California, including United States citizens."). In each of the cited cases, the court noted family ties to the United States, marriage to a legal permanent resident, long-term residence in the United States, graduation from a United States high school, extensive work history in the United States, or some combination of these factors. *See id.* Accordingly, the cited authorities do not show that individuals with circumstances similar to Defendant's have received voluntary departure. *See Gonzalez-Flores*, 804 F.3d at 929 (citing cases illustrating that defendant "failed to carry his burden of showing that aliens with his scant positive equities received relief").

Defendant has failed to meet his burden of showing that it is plausible that the IJ would have exercised discretion to grant voluntary departure based on an absence of positive equities,

6

coupled with the presence of minimal negative equities.  Defendant thus has not shown prejudice from the alleged defects in his 2005 removal proceeding, and has not demonstrated that his May 2005 deportation order was "fundamentally unfair" under § 1326(d)(3).  The May 2005 order may serve as a predicate for the present indictment under § 1326.  *See Ubaldo-Figueroa*, 364 F.3d at 1048.

### IV. CONCLUSION

The Court DENIES Defendant's motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: 8/17/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge